IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KENNETH WOMBLE, Plaintiff

v. Criminal No.: 3:13CV097

CAWTHORN, DESKEVICH & GAVIN, P.C.

and

WHARTON AUTO, LLC, Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Comes now the defendant, Cawthorn, Deskevich & Gavin, P.C. (hereinafter "CDG"), by counsel, pursuant to Rule 12(b)(6) and moves to dismiss the Complaint, based on the following:

**BACKGROUND**

Your plaintiff, Kenneth Womble, (hereinafter "Womble") purchased a 2005 Dodge on December 5, 2005, utilizing financing. The installment note was at some point assigned to Citi Financial Auto(Citi), which provided for an original loan to Womble in the amount of $24,205.42, with interest at 14.15%. The note required monthly payments of $503.63 beginning February 12, 2006 and continuing for 71 months, or through January 12, 2012. See Complaint, Exhibit A.

Womble failed to make payments. On or around September 27, 2007, Citi Financial repossessed the vehicle. See Complaint, Exhibit C. The vehicle was auctioned on November 7, 2007. See Complaint, Exhibit D. The sales price obtained at the auction of Womble's vehicle resulted in a deficiency on the original note obligation. Mr. Womble's account was sold as part of a group of accounts to another entity and then to Wharton Auto, LLC (hereinafter "Wharton"). Wharton retained the services of CDG to pursue collection of the delinquent account.

CDG mailed an initial collection letter to Womble on April 25, 2012. Mr. Womble did not dispute, or request validation of the debt, and otherwise had no contact with CDG's office. No call attempts were made by CDG to Womble. On May 31, a second letter was mailed to Womble. No response from Womble was received. Accordingly, CDG filed a Warrant in Debt in the General District Court of Wythe County for the amount of the deficiency owed to Wharton. The

case was filed by CDG on or before October 26, 2012. The original Wythe General District return date was November 26, 2012. Womble appeared pro se and requested that the matter be set for trial. Trial was set for February 25, 2013. Pleadings were ordered and CDG filed, on behalf of Wharton, a Bill of Particulars on December 17, 2012. Womble, through his attorney, filed a Grounds of Defense and Plea in Bar on or around January 31, 2013. Before January 31, 2013, Womble had not indicated that Womble had retained counsel. CDG non-suited the General District Court case on February 6, 2013.

## LAW AND ARGUMENT

As a preliminary matter, evaluating a Motion to Dismiss under Rule 12(b)(6), the court must accept as true all well pleaded facts, but not bald conclusions. Chisholm v. Transouth Financial Corp., 95 F.3d 331, 334 (4th Cir. 1996).

### A. Complaint Paragraph 18(a)

The Complaint first seeks damages under 15 U.S.C. 1692(f)(1) of the Fair Debt Collection Practices Act against CDG and Wharton. Specifically, Womble contends that Womble signed an Installment Sales Contract with required monthly payments, beginning February 12, 2006. See Complaint, para. 7. Womble admits that Womble breached the terms of the installment contract on or after March 31, 2007. See Complaint, para.8. Womble argues, however, that any enforcement action by the Noteholder must have been filed by late 2011. Accordingly, Womble argues that CDG pursued a time barred debt one year beyond the applicable limitations period. Womble presumably argues that the filing was unfair and deceptive affording him relief under the FDCPA.

To resolve this issue, the court must first determine the correct statute of limitations applicable to this particular contract. The answer to this issue is that the answer is unclear. For that reason alone, Womble's claim of a deceptive fair debt violation should not survive a Motion to Dismiss.

Specifically, the Complaint alleges that the statute of limitations applicable to Womble's particular breach was the four year statute of limitations set forth in Virginia Code Section 8.2-

724. See Complaint, paragraphs 12 and 13[1]. This statute of limitation applies to installment contracts of "goods" as defined by the Virginia Uniform Commercial Code. See, Virginia Code Section 8.2-105. Accordingly, in order to apply the four year statute of limitations, Womble would have to establish that the sale of the motor vehicle to him in 2005, and the coinciding note obligation, was the sale of a "good" under the uniform commercial code. Contrary to Womble's legal conclusions, there is no binding Virginia precedent, or statute, clearly establishing that the sale of a motor vehicle in Virginia is, in fact, the sale of a "good" as defined by Virginia Code Section 8.02-105. There is one Circuit Court case from the Circuit Court of Fairfax County which, admittedly, concludes that the sale of a motor vehicle was and is the sale of a good. See Credit Acceptance Corp. v. Coates, 75 Va. Cir. 267 (2008). In that opinion, the trial court notes, however, that Virginia courts have never explicitly held that a motor vehicles falls within the UCC's definition of a good. See Credit Acceptance Corporation. Additionally, whether motor vehicles are, or are not, considered the sale of a good, the Circuit Court of Fairfax County would not create any binding precedent that would bind the General District Court of Wythe County, Virginia. See Burkholder v. McGraw, 663 Va. Cir. 537 (2003). Moreover, even if this court were to conclude that the sale of a motor vehicle is in fact a sale of good, such decision after the fact would not necessarily impute this court's legal conclusion to CDG at the time of the filing of the Warrant in Debt in the Wythe General District Court on October 26, 2012.

It is just as easy to conclude, on the other hand, that the applicable statute of limitations in the case is the five year statute of limitations applicable to written contracts under Virginia Code Section 8.01-246, or the statute for negotiable instruments. If Virginia Code Section 8.01-246 is applicable, the statute of limitations period would run five year from the date of the breach. As applicable to this fact pattern, the court is then required to dig yet another level to determine the breach date. Particularly, the contract at issue in this case, and as alleged by Womble, is an installment contract. See Complaint, Exhibit A. As such, the contract is a divisible contract which

---

[1]While Womble's Complaint alleges limitations governed by 8.2-724, it appears that Womble intended to rely on Virginia Code Section 8.2-725, which, if at all, would be applicable versus 8.2-724.

allows separate and distinct remedies for each payment as each installment becomes due. A contract to pay money in installments is divisible in its nature. Jones v. Morris Plan Bank of Portsmouth, 168 Va 284 (1937). Hence, each default in the payment of an installment may be the subject of an independent action. Id. The rights of action generally do no arise upon future periodic obligations until they are due, even though there has been a default in the performance of one of the earlier periodic obligations. Wiglesworth v. H.F. Taylor, III, Trustee, 239 Va 603 (1990). The fact that Womble may have initially breached his contract in March or April of 2007, does not end the analysis of breach. Womble, by law, continued to incur regular monthly breaches, each month that he failed to pay, creating coinciding monthly remedies. The contract did not require automatic acceleration of the debt. Acceleration of the debt was at the option of the Noteholder. See Complaint, Exhibit A, paragraph 12. A copy of paragraph 12 is attached hereto as Exhibit A

In other words, Citi could have continued to sue Womble for individual payments, or mitigate its damage by selling the asset through repossession, and liquidating its damage to a deficiency balance. Citi chose to liquidate the damage. Accordingly, the deficiency balance could not have been "due" under Wiglesworth until after the auction on November 7, 2007. That amount would be the amount owed by Womble effectively converting Womble's future payments through January 2012 to one payment. In this case, the Warrant in Debt was filed on October 26, 2012, prior to expiration of 5 years from the damage liquidation date. Accordingly, CDG contends that it actually filed the lawsuit within the applicable five year statute of limitations. If so, as a matter of law, any claim by Womble under 1692 (f)(1) should be dismissed.

Lastly, even if the four year statute of limitations under 8.2-725 is applicable, the defense of statute of limitations in Virginia is not a bar to filing, but an affirmative defense which, by statute, must be raised by a defendant in order to invoke its remedy. See Virginia Code Section 8.01-235. In this case, the pleading itself is allowed, subject to an affirmative defense. If the Virginia General Assembly has clearly stated that a plaintiff may file on a debt beyond the applicable statute of limitations period, it is then logical to infer that the pleading is authorized by

law under 15 U.S.C. Section 1692(f)(1). In this case, Womble raised the statute of limitations as a defense and the client, as a matter of prudence, suggested that a non-suit be taken in the case within four (4) days of the date that Womble raised the defense, and approximately 20 days prior to trial. Based on the foregoing, it cannot be argued that CDG acted in an abusive or deceptive manner as envisioned by the Fair Debt Collection Practices Act.

**B. Complaint 18(b)**

Womble next contends generally that CDG failed to validate the debt at the time of initial contact, or writing within five days thereafter under 15 U.S.C. Section 1692(g)(a). See Complaint, para. 18b. Womble does not allege or provide any document which would support his allegation that Womble ever requested validation of the debt, or that the initial communication from CDG to Womble failed to contain the required account information under USC 1692 (g)(a). Accordingly, as it applies to CDG, Womble's claim under 18(b) must fail as a matter of law.

**C. Complaint 18(c)**

Womble lastly alleges that CDG threatened to take legal action that cannot be taken. See Complaint, para. 18 c. This particular count should be dismissed because the pleading fails to particularize, or include any call, letter, or other threat by which CDG threatened to take legal action which could not have been taken. Accordingly, this allegation should also be dismissed.

Respectfully submitted,

Cawthorn, Deskevich & Gavin, P.C.

/s/

_______________________________

Charles A. Gavin, Esquire
Virginia State Bar #: 31391
Attorney for Cawthorn, Deskevich & Gavin, P.C..
Cawthorn, Deskevich & Gavin, P.C.
1409 Eastridge Road
Richmond, VA 23229

(804)288-7999
(804)285-9301 *facsimile*
E-Mail: c.gavin@cawthorn.net

**CERTIFICATE OF SERVICE**

I hereby certify that on this ____ day of March, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which send notification of such filing (NEF) to John Cole Gayle, Jr., The Consumer Law Group, 5905 West Broad Street, Suite 303, Richmond, Virginia 23230.

___________/s/________________

Charles A. Gavin
Virginia State Bar No. 31391
Cawthorn, Deskevich & Gavin, P.C.
1409 Eastridge Road
Richmond, VA 23229
(804) 288-7999
(804) 288-9015 (fax)
Attorney for Cawthorn, Deskevich & Gavin, P.C.

EXHIBIT
A

## Payments, Security Interest and Vehicle Treatment

7. **PAYMENT.** You agree to make all payments when they are due. Accepting a late payment or late charge does not change your payment due date. This is a simple interest contract. Your final payment may be larger or smaller, depending on whether you make payments late or early. Your payments will be applied first to the earned and unpaid part of the Finance Charge, then to the unpaid Amount Financed and then to any other amounts due. The Finance Charge is earned by applying the Annual Percentage Rate divided by 365 to the unpaid Amount Financed for the number of days outstanding. You may prepay your debt without penalty. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, seized, or missing.

8. **LATE CHARGES.** You will pay a late charge on payments, or parts of payments, which are received by us more than 10 days after the scheduled due date. The late charge is shown on the front of this contract. Our acceptance of any late payment or late charge does not change your payment due date or mean that you may keep making payments after they are due.

9. **SECURITY INTEREST.** You give us a security interest in the vehicle and any accessories, equipment, and replacement parts put on the vehicle; all insurance policies and service contracts financed in this contract, and any rebate, refunds, or proceeds that relate to those policies or contracts; proceeds of any insurance policies on the vehicle; and all money or goods received for the vehicle. This security interest secures payment of all amounts you owe in this contract. You agree to ensure that our security interest (lien) on the vehicle is shown on the title.

10. **VEHICLE TREATMENT.** You agree: to maintain the vehicle in good condition; not to misuse the vehicle; to keep the vehicle free from the claims of others; and not to break any laws or otherwise expose the vehicle to confiscation. You agree that without our written consent you will not: transfer your equity in the vehicle; sublease or rent the vehicle; or take the vehicle outside the United States for more than 30 days. You agree to notify us of any change of address where the vehicle is kept.

## Insurance

11. **REQUIRED PHYSICAL DAMAGE INSURANCE.** You agree to maintain physical damage insurance, acceptable to us that insures you and us against loss or damage to the vehicle, during the term of this contract. You may obtain coverage from any insurance company you choose. Your choice of an insurer will not affect the credit decision or credit terms in any way; provided, however, that we may impose reasonable requirements concerning the creditworthiness of the insurer and the scope of coverage chosen. We must approve the type and amount of the insurance. You agree to give us written proof of such insurance coverage. Whether or not the vehicle is insured, you must pay for the vehicle if it is lost, damaged, seized, or destroyed. We may receive and sign your name on any settlement, draft, or check representing payment made by an insurance company for a loss related to the vehicle.

## Default

12. **DEFAULT.** You will be in default and we may terminate this contract early if: (a) you have given false or misleading information on your credit application; (b) you do not make a payment when it is due; (c) a lien or other claim is made against this contract or the vehicle; (d) a bankruptcy petition is filed by or against you; (e) the vehicle is seized by any local, state or federal government or authority; (f) you alter or fail to repair or maintain the vehicle as required; (g) you do not maintain the required insurance coverage; (h) you do not comply with any of the contract terms; and/or (i) you breach any promise, representation or warranty you have made in this contract.

You agree to be liable, to the extent allowed by law, for reasonable attorney fees and costs incurred by us as a result of your default. Regardless of any language to the contrary, you are only liable for reasonable attorney fees if we hire an attorney that is not one of our salaried employees.

If you default, we may:

Require you to pay the unpaid Amount Financed, the earned and unpaid part of the Finance Charge, and all other amounts due; sue you to collect the amount you owe; **without the use of force or other breach of the peace, enter or have anyone we choose enter the premises where the vehicle may be and, lawfully repossess (take back) the vehicle, including equipment and accessories;** take goods found in the vehicle and hold them for you for 30 days, and if you do not claim the goods during that period, we can dispose of them and have no liability to you, and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance financed under this contract and apply the refunded premium to your outstanding balance.

**If we repossess the vehicle, and we are not precluded by law, we will send you a notice stating that you may redeem the vehicle and the amount needed to redeem. To redeem the vehicle, you must pay us the net amount owed under the contract plus all collection and legal costs, including reasonable attorney fees as provided above and court costs, to the extent permitted by applicable law. You may redeem the vehicle until we sell it. If you do not redeem the vehicle, we may sell it or otherwise dispose of the vehicle. The net proceeds (the money from the sale, less allowed expenses) will be subtracted from the amount you owe us. The allowed expenses are those expenses, fees, and all legal costs that we are entitled to by law as a result of any lawful activity to obtain possession of, recondition, store and dispose of the vehicle after default. If the amount from the sale of the vehicle is not enough to cover the amount you owe us, you will pay what is still owed plus interest. If after we apply the net proceeds to what you owe there is money left, we will pay it to you.**

## Balloon Payment/Fixed Value

13. **BALLOON PAYMENT CONTRACT.** The information in this section 13 applies only if this contract is a balloon payment contract, as indicated on the front of this contract by a check in the box next to "Balloon Payment" in the

## Balloon Payment/Fixed Value (cont'd.)

Excess wear and use includes, but is not limited to: (1) damage to the major driveline components (engine, transmission, differential) not covered by warranty; (2) damage to the vehicle's frame; (3) missing or broken parts or accessories, including optional factory equipment; (4) missing tires, tires that are lesser quality than the original tires, tires that are not produced by the same manufacturer, tires of unequal size (diameter), tires that have sidewall plugs, cuts or exposed cords, tires that have less than 1/8 inch tread, or wheels that are broken or cracked; (5) damage to the body, fenders, metalwork, lights trim or paint, including but not limited to dents or rust; (6) damaged or stained dash, floor covers, and seats; (7) broken glass, including stars, cracks, holes or plugs in the windshield, or other glass; (8) failing to maintain the vehicle according to the manufacturers specifications; (9) after market alterations not installed by an authorized Chrysler dealer; (10) water damage; (11) damage to the interior or exterior that is beyond ordinary wear and use; and (12) any damage that makes the vehicle unsafe or unlawful.

The amount of the excess wear and use deduction is our estimate of what it will cost to repair the excess wear and use on the vehicle. The excess wear and use deduction will be applied whether or not we make the repairs. If you disagree with our determination of the excess wear and use deduction, you may get an estimate of the excess wear and use from an authorized dealer. If you get an estimate, the amount of the excess wear and use deduction will be the lesser of such estimate or our assessed amount. You understand that the greater the excess wear and use deduction the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess wear and use deduction.

The excess mileage deduction is calculated as provided on the front of this contract. You understand that the greater the excess mileage deduction the more you will have to pay us on the due date of the final payment because the transfer value of the vehicle is reduced by the excess mileage deduction.

You agree to transfer the vehicle to us at Creditor's place of business shown on the front of the contract along with the Certificate of Title and any other papers or documents appropriate to transfer title no later than the due date of the final payment. You must also pay us the difference between the final payment and the transfer value of the vehicle.

## Additional Information

15. **WARRANTIES. If the vehicle is for personal use and we, or the vehicle's manufacturer, extend a written warranty or, within 90 days from the date of the contract, extend a service contract, you get the implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you agree there are no such implied warranties.**

16. **ASSIGNMENT.** You understand that this contract will be assigned to Assignee. Assignee will acquire all of our interest in this contract and in the vehicle including the right to receive all payments.

17. **GENERAL.** Unless otherwise provided in this contract, any change to this contract must be in writing and signed by all parties. Notice to you is sufficient if mailed to your last address known by us. If the law does not allow a part of this contract, that part will be void. The remaining parts will be enforceable. If there is more than one Buyer, their obligation shall be joint and several. Any delay or omission by us in enforcing our rights shall not act as a waiver. Section headings in this contract are for convenience of reference only and are not part of the contract for any other purpose. We may assign our rights and obligations under this contract to anyone at anytime without first notifying you. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.**

**THIS CONTRACT IS NOT SUBJECT TO ANY VERBAL AGREEMENT OR MODIFICATION, UNLESS OTHER-WISE PROVIDED IN THIS CONTRACT.**

18. **DEFERRED PAYMENTS.** Any change to this contract must be in writing and signed by all the parties, however, if permitted by law, extensions, deferrals and due date changes may be agreed to orally by you and us, and we will send you a written confirmation of our agreement. Interest will continue to accrue until the next payment is received. Any deferral would not extend any purchased insurance coverage you have.

19. **POWER OF ATTORNEY.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact. Your grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations you owe under this contract are paid in full. As your attorney-in-fact, we can: sign on your behalf all Certificates of Ownership, Registration Cards, applications, affidavits or any other documents required to register and properly perfect our security interest in the vehicle; transfer your entire interest in the vehicle as part of a repossession and sale or if you transfer the vehicle to us (see Paragraph 14.C); act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this contract, and apply the refunded premium or cost to your outstanding balance if you are in default.

20. **GOVERNING LAW.** This contract shall be governed by the laws of the State of Virginia except, if the vehicle is repossessed, then the law of the state where the vehicle is repossessed will govern the repossession. Repossession effected through legal process will be governed by the laws of the state in which such process is brought.

## Important Arbitration Disclosures

21. **ARBITRATION. The following Arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before**